referred to, and remarks that they run quatuor pedibus.

"And this leads us to remark," he continues, "that nothing but the most clear and unambiguous language, demonstrating in the most positive manner that the testator intends to make his general assets liable for all debts contracted in the continued trade after his death, and not merely to limit it to the funds embarked in that trade, would justify the court in arriving at such conclusion from the manifest inconvenience thereof, and the utter impossibility of the paying of the legacies bequeathed by the testator's will, or distributing the residue of his estate, without in effect saying at the same time that the payment may all be recalled, if the trade should become unsuccessful or ruinous. Such a result would ordinarily be at war with the testator's intentions in bequeathing such legacies and residues, and would, or might, postpone the settlement of the estate for a half century, or until long after the trade or continued partnership should terminate."

And after an elaborate opinion upon these points and the proper construction and true interpretation of the codicil under consideration, the court says:

"There is yet another consideration not unimportant to be brought under review. It is that the whole business of the firm is to be conducted by Cawood alone, and that neither the executor nor the egatees are authorized to interfere with or to scrutinize his transactions. Such an unlimited power over his whole assets by a person wholly unconnected with the administration of his estate could scarcely be presumed to be within the intention of any prudent testator. If to all these we add the manifest inconvenience of such interpretation of the codicil, thus suspending for an indefinite time the settlement of the estate and the payment of the legacies, it is not too much to say that no court of justice ought upon principle to favor, much less to adopt it."

In the Wight will the provision is as follows, according to the petition: "The said Harry C. Wight should carry on and conduct said business in said firm name for two years after his (Collins Wight's), death for the joint benefit of his estate and said Harry Wight." This provision is not more restrictive than the one interpreted in the case of Burwell v. Mandeville's executors, and following that authority which elaborately reviews many others, it seems to the court that only the business then conducted by the firm of C. Wight & Son and the capital engaged therein so far as the interest of Collins Wight was concerned, were liable for the debts contracted by Harry C. Wight after he undertook to carry on the business in the firm name in March, 1891, and the individual estate of Collins Wight in the hands of his executors or devisees is not liable on this paper; inasmuch as the original obligations were never proved against the estate of Collins Wight, but instead thereof, notes, ranging in date from

fifteen to twenty-one months after the death of Collins Wight, were accepted from the new and revived firm of C. Wight & Son, consisting, in the opinion of the court, of Harry C. Wight and so much of the estate of Collins Wight as was, at the time of his death, embarked in the business of the firm, and the rights of the holders of the original obligations, as against the general estate, thereby abandoned.

The demurrer, therefore, will be sustained, as to all the causes of action.

---

(Hamilton County Common Pleas Court.)

STATE OF OHIO ex rel. THE BOSTON WOVEN HOSE CO. v. EUGENE E. LEWIS, AUDITOR, AND TILDEN R. FRENCH, TREASURER OF HAMILTON CO.

---

It is not carelessness for the County Auditor to deliver a warrant to the agent of the party in whose favor it is drawn although such agent has no authority to collect in cash.

But the payment of such a warranty by the County Treasurer to such agent on his unauthorized endorsement is gross carelessness and at the peril of the Treasurer.

The remedy of the party in whose favor the warrant was issued is an action for damages by reason of the carelessness of the Treasurer in paying it on a fraudulent endorsement, the measure being the amount of the warrant, with interest.

---

Mandamus.

JELKE, J.

On or about November 23, 1887, the Boston Woven Hose Company, plaintiff, sold through its agent, S. A. Browne, to Hamilton county, acting by its agent, Alonzo Hildreth, certain goods amounting to $319.50 for the use of Longview Asylum. These goods were delivered from plaintiff's headquarters in Boston to said Longview Asylum, together with an invoice for the same, having printed on the face of said invoice the words, "Make all settlements at the Boston office only."

On the 10th day of December, 1887, the Board of County Commissioners approved said bill. On the 13th day of December, 1887, the Board of Control approved said bill, and directed the Auditor to issue a warrant to the order of plaintiff therefor. On the 7th day of January, 1888, the Auditor issued a warrant for the sum of $319.50, payable to the order of "Boston Woven Hose Company", and delivered the same to said S. A. Browne, who endorsed it "Boston Woven Hose Co., per S. A. Browne," and on the same day presented it to the County Treasurer, received the money on it, which he appropriated to his own use; and on April 7, 1888, committed suicide.

I find from the testimony that S. A. Browne was a sales' agent merely, with no power to collect.

I am of opinion (were such a thing possible under the county's method of doing business, which it is not), that it was not within the scope Browne's authority to collect the money for his bill directly, and it would have been gross carelessness for any county officer to so pay it to him.

But I am of opinion that it was not an unwarranted stretch of his authority, as such agent, to receive a warrant payable to the order of the Boston Woven Hose Co.," there was no carelessness on the part of the auditor, (Raine), in delivering such a warrant to him; but the auditor had a right to rely that said warrant would be paid only on the valid legal endorsement of the "Boston Woven Hose Co.," or its agent, duly authorized thereto.

I find that the testimony discloses no authority in the said Browne, to endorse said warrant and collect said money, and discloses nothing which would justify the county treasurer (Ratterman), in believing that he had such authority, and in paying him said money, and that the payment of said money to said Browne, by the said treasurer on the endorsement, "Boston Woven Hose Co., per S. A. Browne," was at the peril of said treasurer, and gross carelessness. I am of opinion, that in this respect the same rule is incumbent on the county treasurer as is upon a bank, which as to a bank is laid down in Armstrong v. National Bank, 46 Ohio S., 512.

"In the absence of a course of dealing or understanding to the contrary between the parties, the duty of a bank is, in all cases, to pay to the person named, or his order, where the terms of a check are such; and he may and should withhold payment until fully satisfied as to the genuineness of the endorsement.''

Plaintiff now asks the court to mandamus the auditor to give him a new warrant for $319.50, for the old warrant, No. 785. The court will not mandamus the auditor to issue a new warrant, as there is nothing to found such a warrant upon, the auditor having already exhausted the force of the order of the county commissioners and board of con trol in issuing warrant No. 785. The court will not mandamus the auditor to deliver to plaintiff warrant No. 785, as such delivery is not "an act which the law specially enjoins as a duty resulting from the office of auditor." R. S., 6741.

The court will not mandamus the treasurer to pay a warrant not in plaintiff's possession, and which on its face is redeemed and cancelled.

What, then, is plaintiff's remedy?

Plaintiff's remedy is not on its original bill of goods, that having been paid by and merged into warrant No. 785; this not being a case of payment of bill by worthless check where seller can elect to proceed on either bill or check, because in this case the bill was paid by the sufficient delivery of a valid and good warrant.

Plaintiff's remedy was an action for damages by reason of the carelessness of the

treasurer in paying a warrant on a fraudulent endorsement, the measure being the amount of the warrant, with interest.

Such was the action in Dodge v. National Exchange Bank, 30 Ohio St., 2.

Whether such action should be maintained against the county, or against the treasurer, individually, it is not necessary in this decision to determine, but inasmuch as plaintiff had "a plain and adequate remedy in the ordinary course of law," mandamus will not lie. Rev. St., 6744. Furthermore, if mandamus were plaintiff's proper remedy, I find that his right arose not later than February 23, 1888, and the petition was filed here in May 11, 1895, and that al though the limitations of the code of civil procedure are not applicable to proceedings in mandamus, yet they are somewhat of a guide to a court of equity in determining whether or not, relator has for an unreasonable time slept on his rights. Chinn v. Trustees, 32 Ohio St., 236; State ex rel. Merrill v. Board of Education, 14 C. C., 97.

Plaintiff's evidence does not sufficiently explain away a delay of seven years, especially as there have been changes in the office of county treasurer, and the deaths of two witnesses, whereby it is claimed that the defendant are deprived of material evidence.

Judgment for the defendant.

Otto Pfleger for plaintiff.

Frank F. Dinsmore, for defendant.